IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PAUL HOLLEY, JR.,                    )   Civ. No. 20-00418 HG-RT
                                     )
                Plaintiff,           )
                                     )
        vs.                          )
                                     )
KILOLO KIJAKAZI, Acting              )
Commissioner of Social               )
Security,                            )
                                     )
                Defendant.           )
                                     )
_____)

**ORDER AFFIRMING THE DECISION OF THE**
**SOCIAL SECURITY ADMINISTRATION COMMISSIONER**

This case involves the appeal of the Social Security
Administration Commissioner's decision to deny Plaintiff Paul
Holley, Jr.'s application for Disability Insurance Benefits.

On April 4, 2018, Plaintiff filed an application for
Disability Insurance Benefits, claiming he was disabled as of
December 15, 2015.  Plaintiff alleged the following physical and
mental impairments: back injury, post traumatic stress disorder
("PTSD"), diabetes, high blood pressure, hearing loss, asthma,
and sleep apnea.  Plaintiff later claimed two additional
impairments: bilateral arthritis of his feet and a kidney cyst.

The Social Security Administration denied Plaintiff's
initial application and his request for reconsideration.
Following an administrative hearing, the Administrative Law Judge
("ALJ") held that Plaintiff was not disabled from December 15,

1

2015 through September 30, 2017, the date last insured.  The
Social Security Administration Appeals Council denied Plaintiff's
request for further review, rendering the ALJ's decision as the
final administrative decision of the Social Security
Commissioner.

Plaintiff then appealed to this Court.

The Court **AFFIRMS** the decision of Social Security
Administration Commissioner to deny Plaintiff's application.


## PROCEDURAL HISTORY

On April 4, 2018, Plaintiff Paul Holley, Jr. applied for
Disability Insurance Benefits.  (Administrative Record
[hereinafter "AR"] at p. 80, ECF Nos. 15-18).

On September 4, 2018, the Social Security Administration
denied Plaintiff's initial application.  (Id. at pp. 80-87).

On October 16, 2018, Plaintiff sought reconsideration of the
Social Security Administration's initial decision.  (Id. at p.
100).

On November 2, 2018, the Social Security Administration
denied Plaintiff's application upon reconsideration.  (Id. at pp.
88-96).

On January 5, 2019, Plaintiff requested a hearing before an
ALJ.  (Id. at pp. 110-11).

On September 17, 2019, the ALJ held a hearing on Plaintiff's

2

application.  (Id. at pp. 31-79).

On November 21, 2019, the ALJ issued a written decision denying Plaintiff's application.  (Id. at pp. 12-30).

On July 30, 2020, the Social Security Administration Appeals Council denied Plaintiff's request for further review of the ALJ's decision.  (Id. at pp. 1-4).  The ALJ's decision became the final administrative decision by Social Security Administration Commissioner after Plaintiff was denied further review.

On October 1, 2020, Plaintiff filed a Complaint in this Court seeking judicial review of the Social Security Administration Commissioner's denial of his application. (ECF No. 1).

On June 7, 2021, Defendant filed the Administrative Record. (ECF Nos. 15-18).

On August 5, 2021, Plaintiff filed PLAINTIFF'S OPENING BRIEF.  (ECF No. 20).

On September 20, 2021, Defendant filed DEFENDANT'S ANSWERING BRIEF.  (ECF No. 21).

On October 5, 2021, Plaintiff filed PLAINTIFF'S REPLY BRIEF. (ECF No. 22).

On November 22, 2021, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.  (ECF No. 26).

## BACKGROUND

Plaintiff claims an onset of disability on December 15, 2015.  He last met the Social Security Act's insured status requirements on September 30, 2017.

## I.   Plaintiff's Work History

Plaintiff is a forty-five year old man.  (AR at p. 80, ECF Nos. 15-18).  He is high school educated, attended one year of college, and is certified as an emergency medical technician. (Id. at pp. 38, 45, 193-94).

Plaintiff served in the United States Army from October 27, 1997 to November 25, 2006.  (Id. at p. 165).  From 2004 through 2006, Plaintiff worked in food services as a line cook while on active military duty.  (Id. at p. 39).  Plaintiff also worked as a jailer during that same time period.  (Id. at pp. 40-42).

From 2008 to 2009, Plaintiff worked as a lot attendant and assisted in the parking of imported vehicles.  (Id. at pp. 43-44).

Later, in 2012, Plaintiff worked as a medical assistant. (Id. at pp. 170-71, 194).  From 2013 to 2014, Plaintiff attended college and, in 2015, Plaintiff was certified as an emergency medical technician.  (Id. at pp. 193-94).  Plaintiff again worked as a medical assistant after receiving his certification.  (Id.) The record reflects Plaintiff did not work or earn any significant income after December 2015.

4

## II.  Plaintiff's Medical History

Plaintiff was diagnosed with four medical conditions that the ALJ determined were severe: degenerative joint disease of the lumbar spine, post-traumatic stress disorder ("PTSD"), asthma, and bilateral hearing loss.  Plaintiff's medical history also reflects numerous other conditions that were determined not to be severe.

**Degenerative Joint Disease of the Lumbar Spine**: Plaintiff suffers from degenerative joint disease of the lumbar spine. Plaintiff attributes most of his physical limitations to this injury.  (Id. at p. 46).

Plaintiff began to experience lower back pain in 2003 while serving in the military.  (Id. at p. 1045).  A 2014 medical examination noted radiculopathy in his lower back resulting in moderate numbness in Plaintiff's lower left extremity.  (Id. at pp. 521-22).  Imaging from 2017 showed mild arthropathy (joint disease), but no "significant spinal canal or neural foraminal stenosis."  (Id. at p. 2421).

Physical examinations throughout Plaintiff's medical records reflect that Plaintiff's lower back exhibited tenderness upon palpitation, muscle spasms, pain upon raising legs, and decreased range of motion.  (Id. at pp. 343, 504, 669-70, 777-78, 1023-24, 1218, 2344, 2518).  Examinations across the same period of time

also found normal balance, normal gait,[1] normal reflexes, strength in all extremities, and largely intact sensation. (<u>Id.</u> at pp. 1023-24, 1046, 1216-18, 1726, 1745, 1754, 1900-01).

Plaintiff has treated his lower back condition with physical therapy, muscle relaxants, and non-steroidal anti-inflammatory medication. (<u>Id.</u> at pp. 499, 1216). Plaintiff ambulates using a cane. (<u>Id.</u> at p. 403).

**PTSD:** Plaintiff's medical records reflect a diagnosis for PTSD.

Examinations throughout the relevant time period showed that Plaintiff experienced symptoms of depression and anxiety. (<u>Id.</u> at pp. 318, 331-36, 1621-26, 2332, 2497, 2504-06).

Throughout the relevant time period, Plaintiff reported difficulties concentrating and being "easily sidetracked." (<u>Id.</u> at p. 1318). Plaintiff also reported difficulty sleeping, loss of interest, low energy, anhedonia, episodic anger, and feelings of worthlessness and guilt. (<u>Id.</u> at pp. 1622, 2329). During examinations, Plaintiff's mood appeared "OK" and calm. (<u>Id.</u> at pp. 1316, 2344, 2497). An examination in 2016 noted that Plaintiff did not appear "deeply depressed, psychotic, suicidal, assaultive, or out of emotional control." (<u>Id.</u> at p. 2518).

Plaintiff stopped pharmaceutical treatment for his PTSD and

---

[1] One examination from 2016 noted that Plaintiff walked with a slight limp as a result of back pain. (<u>Id.</u> at p. 2137).

instead attends counseling.  (Id. at p. 49).  Medical records also note that Plaintiff is independent in his activities of daily living.  (Id. at p. 2502).

**Asthma:**  Plaintiff has a history of asthma.  (Id. at pp. 19-20, 23-24, 988).  His asthma is described throughout his medical records as being "mild and intermittent."  (Id. at pp. 907, 913, 1141).  Lung examinations were substantially unremarkable.  (Id. at pp. 1010, 1019, 1046, 1202, 1726, 1754, 1900).  Plaintiff's lungs were found to be "clear to auscultation"; Plaintiff demonstrated "normal breath sounds"; "no wheezing," "no rhonchi," and "no rales/crackles" were found.  (Id. at pp. 986, 989, 1726, 1754).  Plaintiff's spirometry results were normal.  (Id. at p. 1307).  A 2016 exam showed low lung volumes.  (Id. at p. 2184).

Plaintiff uses an inhaler to treat his asthma.  (Id. at pp. 50, 1009).

**Bilateral Hearing Loss:**  Plaintiff's hearing was tested before, during, and after his service in the military.  Plaintiff's hearing tests suggest he suffered hearing damage to his left ear during his service.  (Id. at pp. 1052, 1246-53).

In 2014, Plaintiff scored 96% in both ears on a speech discrimination test.  (Id. at p. 556).  In 2016, Plaintiff scored 100% in both ears on a speech discrimination test.  (Id. at p. 1248).  Plaintiff's 2016 audiological tests found mild to moderate sensorineural hearing loss in certain frequencies in

both ears.  (Id. at pp. 556-57, 1212-13, 1248-49).  Plaintiff's
hearing loss was found to be consistent with tinnitus and
"recurring humming" in both ears.  (Id. at p. 1212).

Plaintiff uses hearing aids, but reports difficulty hearing
and understanding others when there is substantial background
noise.  (Id. at pp. 2082, 2504).

**Sleep Apnea:** In 2014, Plaintiff was assessed as having
"moderate" obstructive sleep apnea.  (Id. at p. 2008).  A
subsequent sleep assessment from 2017 also found that Plaintiff
suffered from "moderate obstructive sleep apnea," noting it was
"severe" in REM sleep. (Id. at p. 2438).  Plaintiff testified
that he uses a continuous positive airway pressure ("CPAP")
machine to treat his sleep apnea.  (Id. at pp. 50, 71).

**Diabetes:** Plaintiff was diagnosed with diabetes mellitus.
Plaintiff testified that his diabetes is controlled through
medication.  (Id. at p. 48).  Plaintiff's medical records also
show that Plaintiff's diabetes is well-controlled through
medication, including Metformin.  (Id. at p. 2345).

**High Blood Pressure:** Plaintiff was diagnosed with high blood
pressure.  Plaintiff's medical records indicate that Plaintiff's
high blood pressure was controlled using medication.  (Id. at pp.
1901, 2278, 2515).

**Bilateral Foot Arthritis:**  Plaintiff has alleged that he
suffers from arthritis in both feet.  Imaging of Plaintiff's feet

during the relevant time period was unremarkable.  (Id. at pp. 1294, 1453).  Plaintiff was found to have a limitation in the range of motion of his bilateral pedal joints, but his joint motion was found to be within normal limits and he demonstrated "normal gait with stability."  (Id. at p. 2288).

**Kidney Cyst:** Plaintiff has a cyst on his kidney, but reports no functional limitation as a result.  (Id. at p. 18).

The record also shows that Plaintiff suffers from dermatitis and lesions on his legs, which are treated by creams and medication.  (Id. at pp. 18, 1045, 1486).  Plaintiff's records also reflect diagnoses for hyperlipidemia and gastroesophageal reflux disease ("GERD") which are also controlled by medication. (Id. at pp. 18, 1710, 1901).  Plaintiff has a history of alcohol use, but reports no resulting functional impact.  (Id. at pp. 18, 1902, 2342).  Plaintiff is obese, with a body mass index over 40, but evidence does not suggest his obesity impairs his functioning.  (Id. at pp. 18-19, 1710 2450).

## STANDARD OF REVIEW

A claimant is disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is (1) based on proper legal standards and (2) the findings are supported by substantial evidence on the record as a whole.  <u>See</u> 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The party claiming error carries the burden to demonstrate not only the error, but also that the error "affected his 'substantial rights,' which is to say, not merely his procedural rights." <u>Ludwig v. Astrue</u>, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing <u>Shinseki v. Sanders</u>, 556 U.S. 396, 407-09 (2009).  The District Court must uphold a decision based on legal error if that error is harmless.  <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015).


## <u>ANALYSIS</u>

**I.   Applicable Law**

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits pursuant to the Social Security Act, 42 U.S.C. § 423.  The Commissioner of the Social Security Administration evaluates a disability claim using the following five-step sequential analysis:

(1)  Is the claimant presently engaged in substantial
     gainful activity?  If so, the claimant is not disabled.
     If not, proceed to step two.

(2)  Is the claimant's alleged impairment sufficiently
     severe to limit his ability to work?  If not, the
     claimant is not disabled. If so, proceed to step three.

(3)  Does the claimant's impairment, or combination of
     impairments, meet or equal an impairment listed in 20
     C.F.R. Part 404, Subpart P, Appendix 1?  If so, the
     claimant is disabled.  If not, proceed to step four.

(4)  Does the claimant possess the residual functional
     capacity to perform his past relevant work?  If so, the
     claimant is not disabled.  If not, proceed to step
     five.

(5)  Does the claimant's residual functional capacity, when
     considered with the claimant's age, education, and work
     experience, allow him to adjust to other work that
     exists in significant numbers in the national economy?
     If so, the claimant is not disabled.  If not, the
     claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir.

2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

     A claimant alleging disability has the burden of proof at

steps one through four, and the Commissioner has the burden of

proof at step five.  Bustamante v. Massanari, 262 F.3d 949,

953-54 (9th Cir. 2001).

## II.  The ALJ Applied the Five-Step Evaluation

     The ALJ evaluated Plaintiff's disability claim using the

five-step analysis.

     At step one, the ALJ concluded that Plaintiff did not engage

in substantial gainful activity from his alleged onset of

disability on December 15, 2015 through his date last insured,

September 30, 2017.  (AR at pp. 17-18, ECF Nos. 15-18).

At step two, the ALJ concluded Plaintiff had the following severe impairments through the date last insured: degenerative joint disease of the lumbar spine, post-traumatic stress disorder ("PTSD"), bilateral hearing loss, and asthma.  (Id. at p. 18).

The ALJ determined that Plaintiff's other alleged impairments -- including sleep apnea, diabetes, arthritis of the feet, high blood pressure, and kidney cyst -- were well-controlled, unsupported by medical evidence, or did not pose functional limitation such that they were deemed not severe. (Id.)

At step three, the ALJ concluded that Plaintiff's impairments did not meet or equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at pp. 19-22).

At step four, after having considered the entire record, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), subject to the following limitations:

> [H]e can no more than occasionally climb ladders, ropes or scaffolds. He can no more than occasionally crawl. He can have no more than occasional exposure to vibration or extremes of temperature or humidity.  He can have no more than occasional exposure to concentrated levels of dusts, fumes, gasses or other pulmonary irritants.  He can have no more than occasional exposure to environments with loud noises. He can understand, remember, and apply detailed but not complex instructions, but not in a fast paced

12

production type environment.

(Id. at p. 22).

At step five, the ALJ found that the Plaintiff was capable of performing past relevant work as a lot attendant and jailer. The ALJ determined that such past relevant work would not require Plaintiff to perform activities outside the scope of his residual functional capacity.  (Id. at p. 25).

The Parties do not dispute the ALJ's conclusions as to the first three steps of the evaluation.

## III. The ALJ Properly Denied Plaintiff's Application

This appeal from the decision of the Social Security Administration Commissioner centers on the ALJ's findings with respect to Plaintiff's residual functional capacity before step four of the evaluation.

The ALJ concluded that the Plaintiff had the residual functional capacity to perform light work, subject to certain limitations.  (Id. at p. 22).  The ALJ reached this conclusion after considering the entire record, including the objective medical evidence and Plaintiff's own testimony regarding his impairments.  Although the ALJ considered Plaintiff's testimony, he did not credit the testimony in its entirety.  The ALJ explained that his decision to disregard certain of Plaintiff's testimony was based on his finding of inconsistencies between Plaintiff's testimony and evidence in the record.

13

Plaintiff argues that the ALJ committed legal error by disregarding Plaintiff's testimony as to the pain and severity of his symptoms without providing specific, clear, and convincing reasons. Plaintiff's argument is not supported by the record.

**A.   The ALJ Provided Specific, Clear, and Convincing Reasons to Support His Credibility Determination**

A claimant's testimony regarding the pain and severity of symptoms is not conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a). Testimony as to a claimant's symptoms must be taken into consideration unless the ALJ makes a determination to disregard such testimony. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

It is the sole responsibility of the ALJ –- not the District Court –- to "determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). The ALJ is not required to believe every allegation of disabling pain or functional limitation. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

A claimant must provide objective medical evidence of underlying impairments that could reasonably produce the pain or symptoms alleged. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). If the claimant has produced such objective medical evidence, and is not found to be malingering, the ALJ may reject the claimant's testimony as to the severity of their pain

14

or symptoms by providing "specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (explaining that "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony").

Here, the ALJ found that Plaintiff's statements concerning the severity of his symptoms were not entirely consistent with the "overall objective medical evidence and other evidence of record." (AR at p. 23, ECF Nos. 15-18). The ALJ did not discredit all of Plaintiff's testimony, but disregarded Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms." (Id.).

The ALJ explained that Plaintiff testified as to the following functional limitations: inability to lift and carry more than five to eight pounds; difficulty sitting and standing for more than five minutes; balance issues requiring the use of a cane; difficulty climbing stairs; feelings of lethargy; spending most of the day in bed; difficulty hearing others speak when there is substantial background noise; and depression, hyper-vigilance, and being easy to startle. (Id. at p. 23).

The ALJ disregarded Plaintiff's testimony regarding the extent of his functional limitations based on three separate

reasons: (1) contradictory medical evidence, (2) Plaintiff's conservative treatment approach, and (3) inconsistencies in Plaintiff's testimony.

Together, the ALJ's stated reasons provide a sufficient basis for disregarding Plaintiff's testimony. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (explaining that medical evidence and inconsistencies in claimant's testimony are factors an ALJ may consider in rejecting claimant testimony); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (explaining that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment).

### 1. Medical Evidence

An ALJ may consider objective medical evidence in discounting a claimant's testimony. Burch, 400 F.3d at 680-81.

The ALJ considered the medical evidence pertaining to each of Plaintiff's severe impairments in his decision to disregard certain of Plaintiff's testimony.

First, the ALJ considered the medical evidence with respect to Plaintiff's back condition, to which Plaintiff attributes the majority of his physical impairments. The ALJ found that Plaintiff's medical records reflected only mild degenerative changes in Plaintiff's lumbar spine. (AR at p. 23, ECF Nos. 15-18). The records were also inconsistent with Plaintiff's claims regarding his ability to lift only five to eight pounds,

16

difficulties sitting and standing for more than five minutes, balance issues, and difficulty climbing stairs.  The ALJ noted that physical examinations showed "largely normal limits" including "normal strength in all extremities, intact sensation, normal gait, normal balance, and normal reflexes."  (Id.)

Second, the ALJ considered Plaintiff's asthma.  The ALJ stated that Plaintiff's medical history reflected only "mild and intermittent" asthma, which Plaintiff is able to treat using a medicated inhaler.  (Id. at p. 23).  Other records showed that Plaintiff's lungs were "clear" and "normal without wheezing, bronchi [sic], or rales present."  (Id. at p. 24).

Third, the ALJ considered Plaintiff's auditory impairment.  The ALJ acknowledged that the medical records showed "mild to moderate" sensorineural hearing loss in Plaintiff's left ear at certain frequencies.  (Id.)  Plaintiff's medical records diverged from Plaintiff's testimony regarding difficulty hearing or understanding others.  The ALJ noted that the records reflected that Plaintiff's hearing was "within normal limits" at certain frequencies and that Plaintiff "demonstrated a speech discrimination score of 96% in both ears."  (Id.)

Finally, the ALJ considered the medical evidence with respect to Plaintiff's PTSD diagnosis.  While Plaintiff's medical history revealed "abnormalities such as a depressed or anxious mood, and a restricted affect," the records belied Plaintiff's

17

testimony regarding the severity of his symptoms.  (Id.)  For instance, the ALJ noted that in medical examinations Plaintiff's mood appeared calm, and that he did not appear to be "deeply depressed."  (Id. at pp. 24, 2518).

Inconsistencies between Plaintiff's testimony and objective medical evidence in the record were properly considered by the ALJ in his decision to discredit Plaintiff's testimony.  See, e.g., Garza v. Astrue, 380 F. App'x 672, 674 (9th Cir. 2010); Noyes v. Colvin, Civ. No. 16-00252 HG-KSC, 2017 WL 374463, at *9-10 (D. Haw. Jan. 25, 2017).

### 2. Conservative Treatment

An ALJ may properly consider conservative treatment as a basis on which to discount a claimant's testimony regarding the severity of his symptoms.  Parra, 481 F.3d at 751.

The ALJ considered Plaintiff's decisions to pursue conservative treatment for his severe impairments.  The ALJ explained that Plaintiff pursued only conservative treatment for his back pain, to which Plaintiff attributes most of his physical limitations.  (AR at p. 24, ECF Nos. 15-18).  Plaintiff's testimony and medical records reflected a course of treatment that included physical therapy and muscle relaxants.  Plaintiff testified that physical therapy provides him relief, albeit temporarily.  (Id. at p. 48).

The ALJ also noted that Plaintiff pursued conservative

18

treatment for his PTSD.  (Id.)  Plaintiff testified that he no longer treats his PTSD using medication and instead relies only on outpatient mental health counseling.  Here too, Plaintiff testified that his therapy provides him a measure of relief. (Id. at p. 49).

The ALJ properly considered Plaintiff's conservative treatment choices in his decision to discredit Plaintiff's testimony regarding the severity of his limitations.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (explaining that evidence of conservative treatment may be considered in credibility determination).

### 3.  Inconsistent Testimony

An ALJ may consider internal inconsistencies within a claimant's testimony when declining to credit the claimant's statements regarding the severity of his symptoms.  Burch, 400 F.3d at 680-81.

Here, the ALJ found that Plaintiff's testimony regarding regular personal care and regular church attendance was inconsistent with his claimed limitations.  (AR at pp. 23, 24, ECF Nos. 15-18).  Plaintiff testified that he is able to "take care of all of [his] personal needs" in terms of personal hygiene and that he attends church frequently.  (Id. at p. 68).  The ALJ found such testimony did not warrant greater restrictions with respect to Plaintiff's residual functional capacity assessment.

The ALJ properly considered inconsistencies in Plaintiff's testimony in discrediting Plaintiff's claimed limitations. Parra, 481 F.3d at 750 (explaining that inconsistencies between claimant's testimony and medical evidence are proper grounds to discredit testimony).

The ALJ's three reasons for rejecting Plaintiff's testimony -- contradictory medical evidence, conservative treatment, and inconsistent testimony -- were sufficiently specific, clear, and convincing.  Brown-Hunter, 806 F.3d at 489.

**B.    The ALJ Adequately Linked Plaintiff's Discredited Testimony to Contradictory Factors in the Record**

Plaintiff argues that the ALJ's decision is deficient because it fails to adequately identify the discredited testimony or link that testimony to the parts of the record supporting the ALJ's determination.  (Pl.'s Reply at pp. 9-12, ECF No. 22).

The case law does not require an ALJ to provide a line-by-line exegesis of a claimant's testimony or even an extensive analysis of the testimony.  Lambert, 980 F.3d at 1277.  The ALJ need only provide enough to permit a reviewing court to readily identify the discredited testimony and discern its linkage to the ALJ's reasons for rejecting the testimony.  Ho v. Saul, Civ. No. 20-00149 JMS-RT, 2021 WL 1828259, at *7 (D. Haw. May 7, 2021) (affirming ALJ's decision where the "linkage" between testimony rejected by the ALJ and the reasons for that rejection was "readily discernable"); see also Young v. Berryhill, No.

20

18-CV-00195-DKW-RLP, 2019 WL 956789, at *6 (D. Haw. Feb. 27, 2019), aff'd sub nom. Young v. Saul, 845 F. App'x 518 (9th Cir. 2021).

Here, the linkage between Plaintiff's testimony and the ALJ's reasons for rejecting that testimony is readily discernable.  The ALJ methodically examined each of Plaintiff's four severe impairments and articulated reasons for his finding that Plaintiff's symptom testimony did not warrant further limitation with respect to his residual functional capacity. Analysis of this kind meets the standards required by law.  See, e.g., Ho, 2021 WL 1828259, at *7.  On appeal, the District Court cannot "fault the agency merely for explaining its decision with 'less than ideal clarity'" where the ALJ has "set forth the reasoning behind its decisions in a way that allows for meaningful review."  Id. (quoting Brown-Hunter, 806 F.3d at 492).

The ALJ provided specific, clear, and convincing reasons to disregard certain of Plaintiff's testimony and adequately linked his reasons to the rejected testimony.

//

//

//

//

//

//

21

## <u>CONCLUSION</u>

The Social Security Administration Commissioner's decision is **AFFIRMED.**

The Clerk of Court is Ordered to **CLOSE THE CASE.**

DATED: March 22, 2022, Honolulu, Hawaii.

IT IS SO ORDERED.



Helen Gillmor
United States District Judge

<u>Paul Holley, Jr. v. Kilolo Kijakazi</u>, 20-cv-00418 HG-RT, **ORDER AFFIRMING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION COMMISSIONER.**